# United States District Court
## for the Northern District of Oklahoma

---

Case No. 20-cv-595-JDR-SH

---

KEENAN H. MEADORS,

*Plaintiff,*

*versus*

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY,

*Defendant.*

---

### OPINION AND ORDER

---

In 2019, Independent School District No. 1 of Tulsa County, Oklahoma eliminated the role of campus police officer, terminating the employment of all those who held that position, including Plaintiff Keenan Meadors. The affected employees were encouraged to apply for newly created positions, but when Mr. Meadors did so, he was not hired. Mr. Meadors now claims that, by eliminating his position and refusing to re-hire him, the District (1) discriminated against him based on his age, (2) retaliated against him in violation of Title VII, 42 U.S.C. § 2000e, (3) deprived him of due process, and (4) breached fiduciary duties it owed him under the Employee Retirement Income Security Act. *See* Dkt. 30 at ¶¶ 15-45. The District now asks this Court to enter summary judgment on each of Mr. Meadors's claims. Dkts. 86, 87. After reviewing the Parties' briefs and the evidence submitted therewith, the Court concludes that a jury could find in Mr. Meadors's favor with respect to his discrimination claims. No question of fact exists, however, with respect to Mr. Meadors's remaining claims. Accordingly, the District's Motion is GRANTED IN PART and DENIED IN PART for the reasons discussed below.

Case No. 20-cv-595

I.

The facts pertinent to the District's Motion are as follows:[1] After retiring from the Tulsa Police Department, Mr. Meadors was hired as a campus police officer for the District in August 2010. Dkt. 87 at 11.[2] Mr. Meadors received positive performance reviews from 2012 through May of 2017. Dkt. 131 at 349-55. During that time frame, he was promoted from police officer to sergeant. Dkt. 87 at 11.

In February 2017, Mr. Meadors filed a complaint challenging the conduct of two of his superior officers, Deputy Chief Matthias Wicks and Chief Robert Swain. Dkt. 87 at 12; Dkt. 87-4 at 13-14, 18-21. The complaint covered a range of allegedly "illegal/unfair practices," including allegations of sexual harassment by Deputy Chief Wicks. Dkt. 87 at 12; Dkt. 87-4 at 1-4, 18-21. The investigation confirmed the existence of employee concerns about physical expressions of affection in the workplace, but concluded there was no evidence of sexual harassment or misconduct. Dkt. 87-4 at 15. As a result of that investigation, sexual harassment training was recommended for all members of the department, but no adverse action was recommended with respect to Deputy Chief Wicks. *Id.*

At or around the time Mr. Meadors issued his complaint, a vacancy arose for the position of Chief of Campus Police. Dkt 87 at 12; Dkt. 87-1 at 42-52. Deputy Chief Wicks applied for the position, and Mr. Meadors opposed his appointment by signing a Letter of No Confidence, participating in the collection of signatures for that letter, and submitting his own application

---

[1] All citations utilize CMECF pagination. Unless otherwise noted, the facts set forth herein are undisputed. Where the Parties disagree as to a fact, the Court has construed the facts in the light most favorable to, and has drawn all reasonable inferences in favor of, Mr. Meadors. *See Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

[2] As a District employee, Mr. Meadors participated in the Oklahoma Teacher's Retirement System and received medical insurance through HealthChoice. Dkt. 87 at 12; Dkt. 131 at 16.

Case No. 20-cv-595

for the position. Dkt. 87-1 at 42-52. Despite the opposition, Deputy Chief Wicks was selected as the new chief. *Id.*; Dkt. 87 at 12.

Although Mr. Meadors received generally positive performance reviews prior to filing his complaint,[3] that was no longer the case by August 2017, when Chief Wicks provided Mr. Meadors with informal "coaching" regarding: (1) raising his voice, (2) interrupting superiors, (3) having a negative attitude, (4) inappropriate use of a police radio, (5) making disrespectful statements and gestures toward authority, and (6) failure to follow the chain of command. Dkt. 87 at 12-13; Dkt. 87-10 at 2-3.[4]

In September of 2017, Mr. Meadors covered a security camera in the McLain High School security office—an action that contravened at least one prior email directive. Dkt. 87 at 14; Dkt. 87-12; Dkt. 87-15 at 1-10; 131 at 22-24, 357-58.[5] His employment was suspended pending review of a recommendation that his employment be terminated. When the recommendation was upheld, Mr. Meadors requested a pre-termination hearing before the Board of Education. Dkt. 87 at 15. At the hearing, Mr. Meadors admitted he had covered the cameras, but denied knowledge of the 2015 email directing officers not to do so. Dkt. 131 at 352. The Board ultimately agreed that Mr. Meadors should be disciplined for his actions but opted to demote him from Sergeant to Police Officer in lieu of firing him. Dkt. 87 at 15; Dkt. 131 at 380.[6]

---

[3] *See* Dkt. 131 at 324-31.

[4] Mr. Meadors admits to receiving this feedback but disputes both the characterization and merits of Chief Wicks's concerns. *See* Dkt. 131 at 18-20.

[5] The parties dispute whether Mr. Meadors had knowledge of the contents of that email at the time he covered the camera. Mr. Meadors denies any recollection of the 2015 email, and alleges that, although other officers knew that Mr. Meadors and others had occasionally covered their cameras over a two-year period, no corrective actions were taken until Mr. Wicks was named Chief. Dkt. 131 at 21-22, 352.

[6] In reaching this conclusion, the Board considered, among other things, the District's failure to provide counseling, a letter of concern, or a reprimand in connection with the allegedly improper practice, as well as the District's failure to provide "proper disciplinary action in accordance with the policies of the Tulsa Public Schools, the Campus Police,

Case No. 20-cv-595

Approximately three weeks after Mr. Meadors was reinstated, Chief Wicks provided him with a Personal Development Plan. Dkt. 87-7 at 49-52. The plan concluded that Mr. Meadors had engaged in insubordination and disobedience in covering the security cameras and set forth the expectations for Mr. Meadors going forward. Dkt. 87 at 15-16; Dkt. 87-7 at 50-53; Dkt. 131 at 26-27.

The District maintains that Chief Wicks continued to have concerns with Mr. Meadors's job performance between December 2017 and April 2019.[7] There is no evidence that any of these incidents gave rise to any formal disciplinary action against Mr. Meadors, nor does it appear that Mr. Meadors was given any formal opportunity to respond to Chief Wicks's concerns.[8]

In April 2019, District Superintendent Deborah Gist recommended that several departments in the District be reorganized. Dkt. 87 at 17-18. The proposed reorganization plan eliminated the position of campus police officer and created a new role, school safety officer, that absorbed some of the responsibilities previously assigned to campus police officers. Id. at 18; Dkt. 87-

───────────────

and the . . . Collective Bargaining Agreement" prior to suspending Mr. Meadors and recommending his termination. Dkt. 131 at 377.

[7] For example, Mr. Meadors allegedly deleted an email in November 2017 without reading it [Dkt. 87 at 15; Dkt. 87-26]; did not sign the Personal Development Plan provided by Chief Wicks [Dkt. 87 at 16; Dkt. 87-9]; failed to properly log and store narcotics in September 2018 [Dkt. 87 at 16; Dkt. 87-28]; inquired as to his obligation to provide a security video to a school principal [Dkt. 87 at 16; Dkt. 87-29]; inquired as to why Major Green was informing him of his remaining sick time [Dkt. 87 at 16; Dkt. 87-30]; was involved in a search of a student's backpack that was brought to the attention of Chief Wicks [Dkt. 87 at 16; Dkt. 87-31]; transported a student at the request of a probation officer and argued with Chief Wicks as to whether it was proper to do so [Dkt. 87 at 17; Dkt. 87-32]; delayed an inspection of campus police vehicles by making comments about and taking photos of police vehicles that were parked in spots reserved for individuals with disabilities [Dkt. 87 at17; Dkt. 87-33]; and contacted a student outside of school in a manner that upset the student's parents and resulted in the District instructing Mr. Meadors to stop all contact with the student and his family [Dkt. 87 at 17; Dkt. 87-34].

[8] See Dkt. 87-1 at 39 (denying allegation that he refused to sign the Personal Development Plan); Dkt. 87-7 at 34.

Case No. 20-cv-595

47 at 26-27, 40-41. Mr. Meadors and others affected by the plan were notified of the proposal and encouraged to apply for the newly created positions. Dkt. 87 at 18.

Mr. Meadors requested and was granted a pre-termination hearing on the proposed elimination of his position. The hearing was conducted on May 23, 2019, the same day the reorganization plan was presented to the Board. Dkt. 87 at 20. During the hearing, Mr. Meadors, who was sixty-five years old at the time, noted that he was less than a year away from retirement and asked the Board not to fire him. Dkt. 87-1 at 133, 137. The Board was unpersuaded and approved the reorganization plan, eliminating 179 employment positions (including all police officer positions) effective June 30, 2019. The Board approved funding for 207 new positions, including school security officer positions. Dkt. 87 at 20.

Mr. Meadors applied for one of the newly created school security officer positions. Dkt. 87 at 21. Like the other applicants, Mr. Meadors participated in an interview with a four-person panel before receiving a separate interview with Jorge Robles, Chief Operations Officer for the District's Operations Department. Dkt. 87 at 21; Dkt. 87-49. Each interviewer rated each applicant on a standard rubric with a 1-4 scale, with 1 being the worst score and 4 being the best. Dkt. 87 at 21; Dkt. 87-49.[9] Mr. Meadors received an average overall score of 2.5 with the panelists, and an average overall score of 2 as a result of his interview with Mr. Robles. Dkt. 87 at 21; Dkt. 87-49 at 4. While many of the other applicants scored higher than Mr. Meadors, some applicants had comparable scores. *See* Dkt. 87-52 at 3 (reflecting an applicant with an average panel score of 2.2 and an average score of 2.4 with Mr. Robles was hired for the position of school safety officer); *id.* at 4-6 (reflecting that a non-CLEET certified applicant was hired to the position of school safety officer with an average panel score of 2.5 and an average score of 2.6 with Mr.

[9] Although the forms set forth a different range, it appears a 1-4 scale was used.

5

Case No. 20-cv-595

Robles). Mr. Meadors was not asked about his age during the interview, and the District denies that any of the panelists considered Mr. Meadors's age during their evaluations. Dkt. 87 at 21. There is, however, evidence that at least one member of the panel expressed concerns about Mr. Meadors's age mere months before the interview process. Dkt. 87 at 21 (indicating that Major Green was on the interview panel); Dkt. 131 at 510 (stating that "[h]aving an older workforce as in McDonald and Meadors creates challenges for how we are operating").

Following the interviews, a leadership team that included both Mr. Robles and Chief Wicks met to discuss the applicants. When assessing Mr. Meadors, the team discussed not only his interview scores, but also his past job performance and his recent performance assessments. Dkt. 87 at 21. According to the District, the panel ultimately concluded that Mr. Meadors would not be a good fit for the school safety officer position due to his poor interview performance and the incidents known to or reported to members of the panel. Dkt. 87 at 22.

Mr. Meadors filed a complaint with the Equal Employment Opportunity Commission on February 7, 2020, alleging that the District's actions were the product of both age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and retaliatory animus in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The EEOC closed its file and notified Mr. Meadors of his right to sue on August 27, 2020. Dkt. 30 at 12. Three months later, Mr. Meadors initiated this action alleging that the District had, through its conduct, violated Title VII and the ADEA, deprived Mr. Meadors of rights guaranteed under the Due Process Clause of the Fourteenth Amendment, and breached fiduciary duties owed to Mr. Meadors under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* The District now asks this Court to enter summary judgment in its favor on each of these claims, and to hold that Mr. Meadors is not entitled to recover punitive damages from the District.

Case No. 20-cv-595

## II.

When considering the District's Motion, the Court must view the facts in the light most favorable to Mr. Meadors and construe all reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). If, when the facts are viewed in this way, there remain no genuine disputes as to any material facts that would permit a rational jury to find in favor of Mr. Meadors, then summary judgment must be entered in favor of the District. *Id.* (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 1996)) (recognizing that a material fact is one that affects the outcome of a lawsuit, and that a genuine dispute exists where a rational jury could find in the nonmoving party's favor). Thus, the question presented to the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Wicks v. United States*, 304 F. Supp. 3d 1079, 1089 (N.D. Okla. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### A.

With the foregoing standards in mind, the Court first considers Mr. Meadors's claim for retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, which prohibits employers from discriminating against any individual because of his age. *See* 29 U.S.C. § 623(a)(1). At the summary judgment stage, age-discrimination claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). Under that framework, Mr. Meadors has the initial burden of demonstrating that (1) he applied for an open position, which (2) he was qualified for, and (3) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Laul v. Los Alamos Nat'l Lab'ys*, 765 F. App'x 434, 440 (10th Cir. 2019) (quoting *Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1278 (10th Cir. 1999)).

Case No. 20-cv-595

If Mr. Meadors establishes a prima facie case of pretext, the District must then set forth a legitimate, nondiscriminatory reason for its decision not to re-hire him. *Id.* The District's burden is "exceedingly light"; to meet it, the District need only produce admissible evidence that would allow a jury to conclude that it was not motivated by discriminatory animus. *Anaeme*, 164 F.3d at 1279 (citation and quotation marks omitted). If the District satisfies this burden, it then falls to Mr. Meadors to demonstrate that the proffered justification is pretextual. *Id.* at 1278-79. *See Laul*, 765 F. App'x at 1278.

The first two steps of the *McDonnell Douglas* analysis have been met. The District concedes that Mr. Meadors can establish a prima facie case of age discrimination. *See* Dkt. 87 at 31. And Mr. Meadors does not dispute that the District has met its limited burden of production by setting forth sixteen nondiscriminatory reasons for its decision not to re-hire Mr. Meadors. *Id.* at 31-32 (setting forth concerns ranging from behaviors "contrary to the District's vision and values" to improperly labeling evidence and disobeying a security camera directive); Dkt. 131 at 50-53 (addressing only the first and third steps of the burden-shifting framework). Accordingly, the only disputed question is whether a jury could conclude that the sixteen justifications proffered by the District are pretextual. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008).

To establish pretext, Mr. Meadors "must present facts suggesting that [the District's] proffered age-neutral reason for his dismissal is so incoherent, weak, inconsistent, or contradictory" that a jury could find those reasons "unworthy of belief." *Id.* (citation and quotation marks omitted). The Court concludes that Mr. Meadors has presented sufficient facts to create a jury question here. First, the District's assertion that Mr. Meadors was "disobedien[t] to [a] security camera directive in 2017" has already been the subject of disputed hearing, during which the School Board declined to adopt the District's claim that Mr. Meadors acted in violation of written directives. *See* Dkt. 87 at 31; Dkt. 131 at 376-80 (indicating that the school board did not

8

Case No. 20-cv-595

adopt the District's proposed findings of fact, and specifically removed phrases suggesting Mr. Meadors received or had knowledge of the security camera directive). The fact that the School Board disagreed with the District's findings in 2017 supports the conclusion that a jury could do the same here.

Second, the District's own evidence establishes that the District has been, at best, inconsistent when articulating the reasons for its decision not to re-hire Mr. Meadors in 2019. For example, evidence provided by the District suggests that at least some of the individuals involved in the hiring process were not motivated by, or at least not solely motivated by, those sixteen concerns. *See* Dkt. 87-16 at 15 (indicating that Mr. Meadors did not advance from the preliminary interview because of the evaluations provided by the panel); *id.* at 33-37 (discussing interview scores and some, but not all, of the District's proffered reasons); Dkt.87-51 at 1-2 (indicating Mr. Meadors "did not score well . . . and was not perceived by the panel as being a 'good fit'" for the new position); Dkt. 87-52 at 1-2 (indicating that Mr. Meadors did not score well and was not perceived as a good fit "based on his past job performance"). A jury could conclude that the misalignment between the sixteen reasons proffered by the District in its brief and the reasons set forth in the evidence of record is evidence of pretext. *See Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005) (recognizing that the employer's "inconsisten[cy] in the reasons it provided for the termination" was an "indication of pretext"); *Fassbender v. Correct Care Sols.*, LLC, 890 F.3d 875, 887 (10th Cir. 2018) (recognizing that a jury may reasonably infer pretext from inconsistencies, including "abandoning explanations that the employer previously asserted").

Third, many of the District's stated reasons for refusing to re-hire Mr. Meadors are inherently subjective. *See* Dkt. 87 at 31 (indicating Mr. Meadors was disruptive, disrespectful, argumentative, and unwilling to respond to coaching). While "the existence of subjective criteria alone is not considered

9

Case No. 20-cv-595

evidence of pretext," the use of subjective criteria can "provoke a stronger inference of discrimination" when coupled with other circumstantial evidence. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007). In this case, the team responsible for interviewing candidates for the school security officer positions did not review Mr. Meadors's personnel file because it wanted to "consider the same information [for] everyone." Dkt. 87-16 at 16. That same team, however, considered subjective assessments of Mr. Meadors maintained ***outside*** of his personnel file when determining he was not a good "fit" for the job. *See* Dkt. 87-7 at 27-30; Dkt. 87-16 at 27-37. Thus, although the selection process was ***intended*** to be uniform for all applicants, the District departed from this objective in order to consider subjective criticisms of Mr. Meadors—the only candidate whose age had previously been identified as an issue of concern by one of the members of the selection team. *See* Dkt. 87 at 21; Dkt. 131 at 510. A jury could conclude that the use of subjective criteria in this context demonstrates that the District's stated, subjective reasons for rejecting Mr. Meadors are pretextual.

Although the District maintains that it honestly believed that it declined to re-hire Mr. Meadors as a school security officer for the sixteen reasons set forth in its brief [Dkt. 87 at 32], the Court finds that a jury could conclude otherwise based on this record. Indeed, the fact that the District cited sixteen separate grounds for its decision is, in itself, a concern: As the Sixth Circuit has recognized, "[a] multitude of suspicious explanations may itself suggest" that the employer's decision-making process was suspect, and its stated reasons pretextual. *Smith v. Chrysler Corp.*, 155 F.3d 799, 809 (6th Cir. 1998). The evidence in this case is sufficient to cast doubt on the District's claim that it was motivated by the sixteen reasons set forth in its brief. Accordingly, the District's Motion for Summary Judgment is DENIED with respect to Mr. Meadors's ADEA claim.

Case No. 20-cv-595

## B.

The Court next considers the District's argument that it is entitled to summary judgment on Mr. Meadors's claim for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which prohibits an employer from retaliating against employees who engage in protected opposition to discrimination. *E.g., New v. Bd. of Cnty. Commissioners for Tulsa Cnty.*, 434 F. Supp. 3d 1219, 1225 (N.D. Okla. 2020). Mr. Meadors's claim for retaliation can be divided into two separate components: His claim that he was retaliated against when he was demoted in 2017, and his claim that the District's decision not to re-hire him as a school security officer in 2019 was also an act of retaliation.

With respect to Mr. Meadors's 2017 demotion, the District argues that Mr. Meadors's claims are barred because he did not file a complaint with the EEOC until more than two years after the alleged retaliation. Dkt. 87 at 26-27. *See Davidson v. Am. Online*, 337 F.3d 1179, 1183 (10th Cir. 2003) (recognizing that, to preserve a claim under Title VII, a plaintiff must file a charge of discrimination within 300 days of the allegedly unlawful practice). The Court agrees. Mr. Meadors was aware that the District allegedly acted with an impermissible purpose when it demoted him, but nevertheless chose not to file an EEOC complaint at that time because he wanted to continue on as an officer, even if it meant serving at a lower rank. *See* Dkt. 131 at 47 (indicating that Mr. Meadors knew of the improper motive that led to his initial termination but opted not to file a complaint because the District reinstated him, albeit as an officer and not a sergeant). This concession precludes any relief arising out of Mr. Meadors's 2017 demotion. *E.g., Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma,* 986 F. Supp. 2d 1249, 1254 (W.D. Okla. 2013) (holding the court lacked jurisdiction over the plaintiff's claim where the plaintiff did not allege that the claims at issue were addressed in the EEOC complaint).

Case No. 20-cv-595

This does not mean, however, that Mr. Meadors's Title VII retaliation claims are completely foreclosed. Mr. Meadors's complaint with the EEOC, his original Complaint, and his Amended Complaint all allege that the District's decision not to re-hire Mr. Meadors in 2019 was also an act of unlawful retaliation. *See* Dkt. 1 at 2 (indicating the date at issue was April 23, 2019, referencing retaliation for filing complaint, and referencing failure to re-hire); *id.* at 3 (describing failure to re-hire, claiming retaliation for a complaint made in 2017, and checking boxes for discrimination based on sex, age, and retaliation); Dkt. 30 at ¶¶ 31–32.[10] This conduct ***did*** occur within 300 days of the filing of Mr. Meadors's EEOC complaint. Accordingly, Mr. Meadors's claim is timely insofar as he seeks relief arising out of the District's 2019 refusal to re-hire him.

Mr. Meadors's retaliation claim, like his ADEA claim, is subject to the *McDonnell Douglas* burden-shifting framework: Mr. Meadors must first set forth a prima facie case of retaliation by showing that (1) he engaged in protected opposition to discrimination, which (2) resulted in a materially adverse employment action that (3) was causally connected to the protected activity. *Somoza v. University of Denver*, 513 F. 3d 1206, 1212 (10th Cir. 2008). The burden then shifts to the District to set forth a legitimate, nondiscriminatory reason for its decision, which Mr. Meadors may refute by pointing to evidence

---

[10] The EEOC complaint and Mr. Meadors's original Complaint in this action—which he filed without the assistance of counsel—must be construed broadly. *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195–96 (10th Cir. 2004) (recognizing that courts "must" apply "the principle of liberal construction" to EEOC complaints and agreeing that the general description of the problem of age discrimination was sufficiently detailed to describe the action complained of); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (acknowledging that a pro se litigant's pleadings should be construed broadly, and that, where "the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements").

Case No. 20-cv-595

that the proffered reason is pretextual. *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008).

Here, the District concedes that Mr. Meadors engaged in protected activity and suffered an adverse employment action but argues that Mr. Meadors cannot establish a causal connection between the two. Dkt. 87 at 35. The District argues that it is impossible for Mr. Meadors to demonstrate causation because of the sheer amount of time—over two years—between Mr. Meadors's protected activity and the District's decision not to re-hire him as a school security officer. *Id.* at 35-36. Although the amount of time between the two events is significant, the Court concludes that the timing alone is not dispositive given the unique facts of this case. Mr. Meadors has presented evidence that he received positive reviews in 2012, 2013, 2014, 2015, 2016, and May 2017. Dkt. 131 at 349-355. Mr. Meadors alleges that the District's opinion regarding his performance began to change in or around 2017, when he raised concerns that then-Deputy Chief Wicks had engaged in sexual harassment. *See* Dkt. 87-4. Mr. Meadors argues that all of Chief Wicks's criticisms arose after—and as a result of—Mr. Meadors's decision to report Chief Wicks's conduct. *See* Dkt. 131 at 20. And the District's own timeline of events suggests that all of the coaching and concerns raised by Chief Wicks occurred after Mr. Meadors engaged in protected activity. *See* Dkt. 87 at 12-18. Although a jury could conclude from this evidence that Mr. Meadors's performance began to slip at or around the time he accused Deputy Chief Wicks of discrimination, it need not do so. A jury could just as easily determine that, in 2017, Chief Wicks began building a record against Mr. Meadors with the goal of retaliating against him at the first opportunity, and that Chief Wicks did, in fact, retaliate against Mr. Meadors when the opportunity finally arose in 2019. The requisite causal connection is established by the evidence presented here, and Mr. Meadors has established a prima facie case of retaliation.

Case No. 20-cv-595

The District does not address the remainder of the *McDonnell Douglas* analysis with respect to Mr. Meadors's Title VII claim. Had it done so, the Court would nevertheless decline to grant summary judgment because, as discussed in Section IIA, *supra*, the facts of this case would permit a jury to conclude that the District's proffered reasons for terminating Mr. Meadors were pretext for a more nefarious motive—such as a supervisor's desire to be rid of an employee who had charged him with discrimination. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 950 (10th Cir. 2011) (recognizing that a supervisor's animus can be a but-for cause of termination where he or she writes unfavorable reviews that later result in adverse action). Because the evidence of record could permit a jury to find that the District's purported reasons for firing Mr. Meadors are pretextual, the District's Motion for Summary Judgment is DENIED with respect to Mr. Meadors's claim that he was not re-hired because he engaged in protected activity. The Motion is GRANTED, however, with respect to any claims arising out of Mr. Meadors's 2017 demotion.

## C.

The District fares better with respect to Mr. Meadors's claim that he was denied due process under the Fourteenth Amendment. Mr. Meadors makes three separate arguments in support of this claim: First, he argues he was deprived of his procedural due process rights because he was denied a hearing on the nonrenewal of his contract in 2019. Dkt. 131 at 64. Second, he claims that he had a protected interest in new employment following the reorganization, and suggests he was deprived of his rights in connection with the rehiring process. *Id.* at 64-66. Finally, he argues that he was deprived of his substantive due process rights because the District intentionally or recklessly caused him injury. *Id.* at 64-65.[11] The District, in response, argues that

---

[11] In his brief, Mr. Meadors suggests that his due process claims might encompass a broader range of conduct. For example, he references a purported denial of due process in connection with the 2017 disciplinary proceedings and Chief Wicks's decision to record concerns without following the appropriate procedures. *See* Dkt. 131 at 14, 24-26, 31, 58.

14

Case No. 20-cv-595

Mr. Meadors was afforded an appropriate level of process, that he had no interest in continued employment following the reorganization, and that its legitimate, rational reasons for the reorganization are amply supported. Dkt. 87 at 37-41.

The Court agrees with the District on all three points. First, Mr. Meadors's claim that he was "denied his right to a hearing on the nonrenewal of his contract" is contradicted by the record. Dkt. 131 at 64. *See* Dkt. 87-1 at 110; Dkt. 87-46; Dkt. 131 at 36 (admitting that Mr. Meadors requested and received a pretermination hearing). Mr. Meadors acknowledges that he received an opportunity to request a hearing prior to the elimination of his position, notice of the time and date of the hearing, an explanation of the facts supporting the District's proposal, and an opportunity to present his position and cross-examine witnesses at the hearing prior to the adoption of that proposal. *See* Dkt. 87-1 at 110; Dkt. 87-46; Dkt. 131 at 36-37 (response to statement of fact no. 29).[12] The Fourteenth Amendment does not require more in the circumstances presented here. *See West v. Grand Cnty.*, 967 F.2d 362, 369 (10th Cir. 1992) (concluding that the plaintiff received an "adequate post-termination hearing" where she was represented by counsel, presented

─────────────────────

The mere recitation of these alleged facts "is not tantamount to raising the issue [of whether additional Fourteenth Amendment violations took place] in opposition to summary judgment." *Vincent v. Lindsey Mgmt. Co.*, No. 12-CV-210-JED-PJC, 2013 WL 6732661, at *6, n.3 (N.D. Okla. Dec. 19, 2013). Because Mr. Meadors does not present any arguments regarding these other events, he has waived any argument that he suffered deprivations independent of those arising out of the 2019 reorganization. *Id.*

[12] Although Mr. Meadors suggests that hearing was insufficient because it addressed the reorganization of multiple departments, and not just the campus police, he has failed to show that he requested that the reorganization be considered piecemeal or sought additional time to address the evidence concerning the reorganization as a whole. Accordingly, Mr. Meadors waived his right to object to the format of the proceeding before this Court. *See West*, 967 F.2d at 370 (holding the plaintiff "expressly waived" his right to raise partiality concerns by proceeding without requesting a ruling on his claim that the commissioners were impartial).

testimony and witnesses, and sought to establish a reduction-in-force was subterfuge).[13]

Next, the Court concludes that Mr. Meadors was not deprived of any rights owed to him in connection with the reapplication process. Although it is undisputed that Mr. Meadors had an expectation of continued employment *prior* to the reorganization,[14] he no longer had that expectation *after* the reorganization was approved. *See* Dkt. 87-35 (indicating affected employees could apply for vacant and newly created positions); Dkt. 87-36 (indicating employment would continue "if you apply for and are selected for a different position"). Once Mr. Meadors's position was eliminated, he no longer had a "reasonable expectation of continued employment" and, consequently, no property right that was subject to constitutional protection. *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1129 (10th Cir. 2001) (recognizing that "a legitimate claim of entitlement to continued public employment arises only when there are substantive restrictions on the ability of the employer to terminate the employee"). *See* Dkt. 87-36 at 2. Because Mr. Meadors lacked a

---

[13] The Court's analysis is based upon the Tenth Circuit's discussion of the post-termination proceedings in *West*, rather than the pre-termination proceedings. Although the District argues that minimal pretermination proceedings can comport with due process [Dkt. 87 at 39], this is true only where an adequate post-termination proceeding affords "more formal due process protections." *West*, 967 F.2d at 368-69 (citation and quotation marks omitted). *See Calhoun v. Gaines*, 982 F.2d 1470, 1476–77 (10th Cir. 1992) (stating that, "in cases where the pretermination is less elaborate, a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge"). Because the Parties do not discuss the post-termination proceedings afforded to Mr. Meadors (if any), the Court considers whether the pre-termination process afforded Mr. Meadors comports with the more "elaborate" requirements typically required at the post-termination stage.

[14] Under the Collective Bargaining Agreement between the District and the local chapter of the American Federation of Teachers (of which Mr. Meadors was a member), Mr. Meadors's employment could only be terminated for cause. *See* Dkt. 87-44 at 10. As a result, he had an expectation of continued employment that was "sufficient to invoke the protections of the Fourteenth Amendment." *West*, 967 F.2d at 366 (recognizing that the county's restrictive discharge policy afforded constitutional protections to the plaintiff and entitled her to due process).

protected property interest in reemployment by the District, he did not suffer any constitutional violations in connection with the reapplication process.

Finally, the Court finds that Mr. Meadors has failed to present facts that would permit a jury to find in his favor on his substantive due process claim. To prevail on that issue, Mr. Meadors must present evidence that the District exercised its authority in a way that "shocks the conscience." *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (citation and quotation marks omitted). Only "the most egregious official conduct" will meet this standard. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citation and quotation marks omitted). There is no evidence of conscious-shocking behavior here. Even if, as Mr. Meadors claims, Chief Wicks and Deborah Gist intended to use the reorganization plan to end Mr. Meadors's employment, there has been no showing that the members of the Board of Education who voted to approve the reorganization plan knew of, let alone shared, that intent. *See* Dkt. 87-47; Dkt. 131 at 378-79 (expressing personal belief that actions were taken to retaliate against Mr. Meadors, but failing to indicate whether that belief was shared or understood at the board meeting where the reorganization plan was discussed).

The Board of Education was presented with rational reasons for the reorganization plan following a hearing. *See* Dkt. 87-40; 87-47. All of the evidence of record suggests that the Board relied on those reasons, and there is no evidence the Board was motivated by an improper purpose. There is, in short, no evidence that would permit a jury to conclude that the Board's reliance on the materials presented to it was an abuse of authority, "let alone one sufficient to shock the judicial conscience." *Koessel*, 717 F.3d at 750 (finding no substantive due process violation where the plaintiff failed to demonstrate that the defendant's reliance on a report was pretextual, and the report provided the defendant with rational reasons for its decision). Accordingly, Mr. Meadors's substantive due process claim—like his procedural due process

Case No. 20-cv-595

claims—must fail, and the District's Motion for Summary Judgment is GRANTED with respect to those claims.

### D.

The District next argues that it is entitled to summary judgment on Mr. Meadors's claim that the District breached the fiduciary duties it owed him under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* The District argues that "governmental plans" are exempt from the provisions of ERISA, *see* 29 U.S.C. § 1003(b), and that the plans at issue in this case—the Oklahoma Teachers' Retirement System and HealthChoice—qualify as governmental plans "established or maintained" by a public entity, namely, the State of Oklahoma. *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir. 2009). *See* Dkt. 87 at 12; Dkt. 87-3.

In response, Mr. Meadors argues that "there is not enough information to determine if Oklahoma's school district plan is not covered under ERISA," and that the District "cannot merely make the statement that it is not covered." Dkt. 131 at 67. He does not, however, present any evidence to contravene the District's evidence that the plans at issue in this case are "governmental plans" that were "established [and] maintained for its employees . . . by the government of [Oklahoma]" and are therefore exempt from ERISA's requirements. 29 U.S.C. § 1002 (32) (defining "governmental plan"); *id.* at 1003(b) (excluding "governmental plans" from the provisions of 29 U.S.C. Chapter 18, Subchapter 1).[15] A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics*

---

[15] *See* Okla. Stat. tit. 74, §§ 1303, 1316.1, 1316.3 (discussing Teachers' Retirement System of Oklahoma); 2003 OK AG 15 (indicating that Okla. Stat. tit. 70, §§ 26-101 *et seq.* "requires the Legislature to 'appropriate adequate funding to the State Board of Education . . . for the purpose of providing a flexible benefit allowance to school district employees . . . who may elect to use the allowance to purchase health insurance and other cafeteria plan benefits" (citation and quotation marks omitted)).

Case No. 20-cv-595

*Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). He cannot "rest on ignorance of facts, on speculation, or on suspicion," and he "may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). But that is what Mr. Meadors attempts to do here. Dkt. 131 at 67. Mr. Meadors does nothing more in response to the District's Motion than express "hope that something will turn up" to support his ERISA claims. *Id.* He has therefore failed to contravene the evidence that the plans at issue in this case are "governmental plans" and failed to respond to the District's legal arguments that these plans are exempt from ERISA's requirements. Because Mr. Meadors presents no evidence or argument in response to the District's Motion, summary judgment is GRANTED with respect to Mr. Meadors's ERISA claims.

## E.

Finally, although the District sought summary judgment with respect to Mr. Meadors's claim for punitive damages, Mr. Meadors has already voluntarily dismissed that claim. *See* Dkts. 103, 108. Accordingly, the District's Motion to Dismiss is DENIED AS MOOT with respect to this issue.

## III.

For the reasons discussed above, the Court concludes that disputed questions of fact exist with respect to Mr. Meadors's claims of discrimination under Title VII and the ADEA, and those claims should be permitted to proceed to trial. No disputed questions of fact remain, however, with respect to either Mr. Meadors's assertion that the District deprived him of due process or his claim that the District violated its fiduciary duties under ERISA, and the District is entitled to judgment in its favor on those claims. Accordingly, the District's Motion for Summary Judgment [Dkt. 86] is GRANTED IN PART and DENIED IN PART as discussed herein.

Case No. 20-cv-595

DATED this 3d day of October 2024.

_____
John D. Russell
*United States District Judge*